UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER PIERCE,

    Plaintiff,

v.

ROBERT BURKART, ET AL.,

    Defendants.
_____/

Case No. 03-74250

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [35, 36, 42]**

This is a civil rights action, brought under 42 U.S.C. § 1983, and alleging that Defendant Officers violated Plaintiff's Fourth and Fourteenth Amendment rights by using excessive force when seizing Plaintiff in his home on October 31, 2001.  The matter came before the Court on January 26, 2005, on the parties' cross-motions for summary judgment. The Court took the motions under advisement and ordered Plaintiff's counsel to present Plaintiff for a continued deposition on the issue addressed by the Court at the January 26, 2005 hearing.  Plaintiff's counsel has submitted a copy of the deposition transcript to the Court, and the Court is now ready to rule on these pending motions.  For the reasons stated below, Defendants' motions are GRANTED IN PART and DENIED IN PART. Plaintiff's cross-motion is DENIED.

**I.    Facts**

The conduct at issue here occurred on October 31, 2001.  On that date, Defendant

Officers Burkart, Nicholas, St. Germaine and Lawson, all members of the S. Oakland Narcotics and Intelligence Consortium ("SONIC"), executed a warrant issued that same day to search Plaintiff's home at 648 S. Winding Dr., Waterford Township, Michigan. Officers Burkart and Nicholas are employed by the Farmington Hills Police Department. Officers St. Germaine and Lawson are employed by the West Bloomfield Township Police Department.

The warrant provided that the police were to search all rooms and persons located at Plaintiff's home on S. Winding Drive in Waterford Township and to seize all controlled substances, firearms, and narcotic paraphernalia among other drug-related items. (Pl.'s Motion, Ex. A at 1.)

The Affidavit supporting the search warrant was prepared by Officer Gruenwald of the West Bloomfield Township Police Department.[1] It provided the following. A Confidential Informant ("CI") had contacted Officer Gruenwald, a West Bloomfield police officer, during the week of August 20, 2001. The CI told Officer Gruenwald that a male known as "Rick" was trafficking marijuana, that the CI had purchased marijuana from Rick on several occasions, that Rick lives at 648 S. Winding Dr., Waterford Township, Michigan, with his girlfriend, Elizabeth Mary Pierce, and that Elizabeth Mary Pierce is also selling marijuana with Rick out of 648 S. Winding Drive in Waterford Township. (*Id.* at 3.)

Surveillance officers observed a vehicle registered to Elizabeth Mary Pierce parked in the drive at 648 S. Winding Drive. Moreover, a number of controlled purchases of marijuana were conducted by the CI under Officer Gruenwald's supervision within a five

---

[1]Officer Gruenwald is not named as a Defendant in this suit.

week period. In each controlled buy, police surveillance observed Rick exit the residence at 648 S. Winding Drive, meet the CI at a predetermined location, sell the CI marijuana, and observed Rick return directly after the buy to 638 S. Winding Drive and saw him enter the house. (*Id.* at 3-4.)

Defendant Burkart testified that as he and Officers Nicholas, St. Germaine and Lawson entered Plaintiff's home, they yelled "police officers, search warrant" several times. (Defs. Burkart and Nicholas' Motion, Ex. 2, Burkart Dep. at 68.) Officer Burkart stayed at the front door to provide security. (*Id.* at 51, 55, 69.) Officer St. Germaine encountered Plaintiff's wife at the top of the steps that led upstairs. He yelled "police, search warrant," ordered her to get down on the ground at the top of the stairs, and asked if anyone else was upstairs. She replied that her husband was and pointed to an upstairs bedroom. (Ex. 3, St. Germaine Dep. at 16-18.) As the officers ran past her on the stairs, she told them not to hurt her husband, that he had a bad heart and that he was sleeping. (B. Pierce Dep. at 24.)

Officer St. Germaine, accompanied by Officer Lawson, went into the bedroom, saw Plaintiff sleeping in the bed. (St. Germaine Dep. at 19.) When they entered the bedroom, Officer St. Germaine yelled, "police, search warrant" and told Plaintiff to get up. Plaintiff yelled back "fuck you" and, rather than getting up, turned over on his stomach with his face to the wall, ignoring the officers. (*Id.* at 22.) Officer St. Germaine testified that his main concern at that time was whether there was a weapon off to the side of the bed and that Plaintiff would have ready access to it. (*Id.* at 23.) The bedroom was small, crowded with furniture, and had no walking room whatsoever on the sides of the bed. (*Id.* at 34; Nicholas Dep. at 28; Burkart Dep. at 19; B. Pierce Dep. at 33, 35, 66.)

3

Although Plaintiff testifies that he slept without covers, Officer St. Germaine testified that at this time he pulled a sheet off of Plaintiff. (St. Germaine Dep. at 24; R. Pierce Dep. at 88.) Officer St. Germaine grabbed Plaintiff's left arm while Plaintiff was flailing around, pushing him away, and yelling "fuck you, fuck you." In an attempt to secure Plaintiff, Officer St. Germaine tried to get on top of him, near his left arm, so he could handcuff him. Plaintiff struggled with Officer St. Germaine. (St. Germaine Dep. at 29, 31-32.)

At this point in time, Officer Lawson was also trying to secure Plaintiff so he could be handcuffed. He was on the bed, trying to handcuff Plaintiff when his right leg got trapped under Plaintiff. (Lawson Dep. at 17.) Officer Lawson began yelling that his right leg was going to break because it was trapped under Plaintiff's body, and yelled to Officer St. Germaine to spray Plaintiff with pepper spray. Officer St. Germaine did so. (St. Germaine Dep. at 33; Lawson Dep. at 17-18, 20.) Officer Lawson got his leg loose, but Plaintiff continued to actively kick and resist. (St. Germain Dep. at 34; Lawson Dep. at 18.) That is when Officer Nicholas came into the bedroom. (Lawson Dep. at 18.)

Officer Nicholas testified that, before entering the bedroom, he heard Officer St. Germaine saying "police officer, we have a search warrant, show me your hands," and another unrecognized voice saying "fuck you, fuck you." (Nicholas Dep. at 25, 28, 30.) When he entered the bedroom, he saw Plaintiff was very agitated and screaming "fuck you." Officer St. Germaine had a hold of his left arm. (*Id.* at 28.) Officer Nicholas sprayed Plaintiff with pepper spray. (*Id.* at 46-47.) Plaintiff's hands were not handcuffed together at this time. (*Id.* at 47.) At this time, one of the Officers yelled to Officer Burkart, "we need cuffs; somebody bring up cuffs," and Officer Burkart responded. (Nicholas Dep. at 46; Burkart Dep. at 71.)

Before responding, Officer Burkart could hear officers hollering, "we have a search warrant," and Plaintiff responding "fuck you" several times. Officer Burkart entered the bedroom with another set of handcuffs. He saw Plaintiff struggling and resisting the Officers who were attempting to handcuff him. Plaintiff was on his stomach. Officer Lawson had Plaintiff's right hand cuffed, and was holding onto the cuffs. Another of the Officers had Plaintiff's left arm behind his back. Officer Burkart then put his handcuffs on Plaintiff's left wrist and then joined the two sets of handcuffs together behind his back. (Burkart Dep. at 19, 71-72.)

Once Plaintiff was secured in handcuffs, he eventually became compliant and was led downstairs. (Burkart Dep. at 73.) Officer St. Germaine testified that from the time he passed Plaintiff's wife on the steps until Plaintiff was handcuffed was probably less than three minutes. (St. Germaine Dep. at 42.)

Prior to entering the bedroom, Officer Burkart learned from Plaintiff's wife that Plaintiff had recently had some type of heart surgery. (Burkart Dep. at 56.) She also told him that Plaintiff was drinking quite heavily earlier in the evening. (*Id.* at 75-76.) Officer Burkart later told Officer St. Germaine that Plaintiff appeared intoxicated. (*Id.* at 76.) Officer St. Germaine testified that, when in the bedroom struggling with Plaintiff, he smelled intoxicants on Plaintiff's breath and that Plaintiff appeared intoxicated. (St. Germaine Dep. at 43-44.) Plaintiff testified that he probably had two drinks of straight whiskey that night. (R. Pierce Dep. at 81.) Plaintiff's wife confirmed that he had been drinking. (B. Pierce Dep. at 14.)

Plaintiff complained that his eyes were burning, that his left eye was swollen, that he was having difficulty breathing, and that his right wrist and chest hurt. Waterford medics

5

were called, and he was transported to Pontiac Osteopathic Hospital at his request to be treated. (Burkart Dep. at 73-76; St. Germaine Dep. at 58.) Because of Plaintiff's complaints, SONIC supervising officer, Michael Turner, asked Officer St. Germaine to take a picture of Plaintiff's face before he was taken to the hospital. The sole Polaroid photograph taken did not show any bruising of the left eye or left cheek or any redness or puffiness of the left cheek. Rather, it showed Plaintiff's left eye which was swollen, red, and puffy. The photograph was placed in the case file to be given to the detective in charge, Detective Titterington of the Farmington Hills Police Department. It is unknown what happened to the photograph after that point, and it cannot now be located. All SONIC reports are filed through the Farmington Hills Police Department. (M. Turner Dep. at 10-12, 14-17; St. Germaine Dep. at 46-48, 50-58.)

Plaintiff left the hospital after about ten minutes despite hospital personnel's advice not to do so. He never received treatment. Rather, he walked to his niece's home in Pontiac and had her drive him back home. (R. Pierce Dep. at 49-51.)

Plaintiff's wife also took several photographs of Plaintiff's face. The first was taken after he returned home from the hospital. It shows some bruising on the left side of the face in the area of the left eye and the left eye starting to swell. (R. Pierce Dep. at 73-74.) Photos taken on November 2, 2001, show the left eye badly bruised. (Id. at 72.) Photos taken on November 5, 2001, also show bruising of the left cheek and left eye. (Id. at 73-74.) Officer St. Germaine testified that, on the night of October 31, 2001, Plaintiff's eye was not as severely swollen as shown in these subsequent photos and there was no bruising to the left cheek or left eye evident that night. (St. Germaine Dep. at 48, 56.) SONIC Supervising Officer Turner likewise testified that, on October 31, 2001, Plaintiff's left eye

6

appeared to be swollen, red, and puffy, but he did not recall seeing any redness or puffiness of the left cheek and saw no bruising of the left cheek or left eye. (M. Turner Dep. at 14, 17.)

Officers St. Germaine and Nicholas testified that they never punched or hit Plaintiff. (St. Germaine at 34, 36; Nicholas Dep. at 30.) Officers Burkart, St. Germaine, and Lawson testified that they never saw any of the Officers punch or hit Plaintiff. (Burkart Dep. at 71; St. Germaine Dep. at 38; Lawson Dep. at 22.)

As a result of the search, Officers found a ziploc bag containing 1.8 grams of marijuana, numerous other sandwich bags with residue, hand scales, and an additional 2.5 grams and 1.6 grams of marijuana respectively. (Nicholas Dep. at 52-54.) A request to press charges against Plaintiff for resisting and obstructing was presented to the prosecutor in January 2000, but the prosecutor declined to press charges against Plaintiff. (Burkart Dep. at 82-84.)

Plaintiff provides a different version of the facts. Plaintiff testified that, while in the bedroom, he does not recall Defendant Officers saying a word to him. He further testified that he never resisted and did not say a word to them. (R. Pierce Dep. at 87, 89, 90, 93, 101, 121.) He assumes Defendants punched him on the ribs and legs to wake him up because his legs and ribs subsequently hurt and were slightly bruised. No photographs were taken of his legs or ribs. (R. Pierce Dep. at 66-67, 86, 121-22; R. Pierce 2/17/05 Cont'd Dep. at 5.)

Plaintiff initially testified that the following sequence of events occurred: 1) he was awakened; 2) sort of sat up in bed; 3) was pepper sprayed for the first time, 4) was forced back down on the bed and was handcuffed while lying flat on stomach; 5) was sprayed

7

again; and 6) was punched rapidly about four times hard on the left side of his face and left eye with what felt like a closed fist. (R. Pierce Dep. at 62-65, 88, 92-93, 94-95, 102-103, 116-17.) This testimony did not clarify whether Plaintiff's hands were cuffed together when he claims he was pepper sprayed a second time and punched in the left cheek/eye area. At his continued deposition, Plaintiff testified that after the handcuffs were clicked together and he was lying flat on his stomach, he was sprayed for about a minute or more in the eyes, ears, and mouth and then was repeatedly punched in the left eye and left cheek. During this time, the bed was moving, the police officers were moving, but Plaintiff was not. (R. Pierce 2/17/05 Dep. at 11-20.)

After being handcuffed, he was then led downstairs by the Officers. (*Id.* at 96.) He estimates that the whole incident took less than a couple of minutes. (*Id.* at 101.) He does not know who pepper sprayed him or punched him but believes he was punched in the face by only one Officer. (*Id.* at 62-65, 115, 116.)

Plaintiff's wife testified that, while the Officers were in the bedroom with her husband, she could not see what was happening in that room but heard the bed springs creaking, people bumping into the dresser, a sound like someone slugging someone two or three times, her husband swearing at the police, and the police saying "check to see if he has a gun," "spray him," and "spray him again", and heard her husband say "stop, get that shit out of my face." (B. Pierce Dep. at 33-36, 37-38, 41, 43-44, 45-46.) She also testified that she called out to her husband, "Roger, it's the police." (B. Pierce Dep. at 39.) She estimated that the incident in the bedroom took three or four minutes. (*Id.* at 36, 49.) When she and her husband were both brought downstairs and in the living room of their home that evening, Plaintiff's wife testified that Plaintiff looked like he had been hit because

8

his face and left eye were swollen. (*Id.* at 56-58.)

Plaintiff filed this action against Defendants St. Germaine, Lawson, Nicholas and Burkart in October 2003. This Court dismissed Plaintiff's state-law claims without prejudice in November 2003. Plaintiff filed an Amended Complaint on November 14, 2003, alleging a § 1983 claim of excessive force in violation of his Fourth and Fourteenth Amendment rights, and re-alleging state-law claims that were previously dismissed. On December 19, 2003, this Court issued a second order dismissing Plaintiff's state-law claims without prejudice.

After the close of discovery and two weeks before the dispositive motion cut-off date, Plaintiff filed a motion for leave to amend his complaint to add an additional § 1983 claim based on Defendants' alleged failure to knock and announce their presence before executing the search warrant. The Court denied Plaintiff's motion, finding the request for an amendment untimely and unduly prejudicial.[2]

At the January 26, 2005, motion hearing, the Court took the parties' motions for summary judgment under advisement, ordering Plaintiff's counsel to present Plaintiff for a continued deposition so as to allow counsel to clarify whether Plaintiff was claiming that he was pepper sprayed and punched in the left cheek/eye area <u>after</u> being handcuffed. Plaintiff has been deposed and his continued deposition testimony has been submitted to

---

[2] Plaintiff and his wife subsequently filed a new cause of action against these same Defendants alleging a § 1983 claim that their Fourth and Fourteenth Amendment rights were violated when the police failed to knock and announce their presence prior to gaining entry into their home and a loss of consortium claim. (Case No. 04-74185, filed Oct. 26, 2004.) Plaintiffs' cases were subsequently consolidated by this Court, and Defendants have filed motions for summary judgment on Plaintiffs' knock and announce claim.

9

the Court as ordered. The Court is now prepared to rule on the parties' cross-motions for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  Analysis

10

**A. Defendants Motions for Summary Judgment**

In their motions for summary judgment, Defendant Officers St. Germaine and Lawson and Officers Nicholas and Burkart argue that, even construing the evidence in the light most favorable to Plaintiff, there is no evidence that they violated Plaintiff's clearly-established constitutional right to be free from the use of excessive force when they handcuffed and arrested him on October 31, 2001. Defendants further argue that, under the circumstances presented here, even if they used the amount of force Plaintiff claims they did, they are entitled to qualified immunity. Defendants' motions are GRANTED IN PART AND DENIED IN PART.

Plaintiff claims that Defendant Officers violated his Fourth and Fourteenth Amendment right to be free from the use of excessive force.[3] Specifically, Plaintiff argues that (1) Defendants used excessive force when they attempted to wake him up with what felt to him like punches and left him with some minor bruises; (2) Defendants used excessive force when they pepper sprayed and punched him <u>after</u> his hands were cuffed together; and (3) certain of the Defendant Officers failed to stop or intervene in the use of excessive force. After a brief discussion of the legal principles for analyzing excessive force claims, the Court addresses each of Plaintiff's specific arguments in support of his excessive force claims.

**1. Legal Principles**

---

[3]Plaintiff also alleged in his First Amended Complaint that his Fourth and Fourteenth Amendment rights were violated because he was arrested without probable cause. (Am. Compl. ¶¶ 13, 17.) Plaintiff has apparently abandoned this claim. His Responses and Cross-motion fail to address or present evidence in support of this claim. Accordingly, Defendants are entitled to summary judgment on any such claim alleged in Plaintiff's amended complaint.

The right to be free from the use of excessive or unreasonable force is a clearly established constitutional right. *See Graham v. Connor*, 490 U.S. 386, 392-99 (1989). "The 'reasonableness' inquiry in an excessive force case is an objective one; consequently, [the Court] must consider 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Ingram v. City of Columbus*, 185 F.3d 579, 596 (6th Cir. 1999) (quoting *Graham*, 490 U.S. at 397).

The objective reasonableness of the officers' actions is judged "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Ingram*, 185 F.3d at 596 (quoting *Graham*, 490 U.S. at 396). The reasonableness determination is fact-specific and is analyzed under a totality of the circumstances test which considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram*, 185 F.3d at 596 (internal quotes and citation omitted).

### 2. Application to Plaintiff's Claims

#### a. Force Used Before Plaintiff's Hands Are Cuffed Together

Defendants argue that, viewing the evidence in the light most favorable to Plaintiff, the amount of force used to wake Plaintiff from his sleep and to subdue him <u>before</u> his hands were cuffed together was objectively reasonable under the circumstances presented here; i.e., a drug raid where guns are often present and Plaintiff's reaction to the Officers' attempts to secure him and proceed with their search of the residence. Defendants are correct.

Plaintiff admits that, during the few moments in his bedroom when the violation allegedly occurred, he was initially asleep, had difficulty waking up and understanding what was happening, turned over on his stomach when Defendant Officers were attempting to awake and secure him, and later attempted to sit up despite Defendant Officers' attempts to have him remain on his back while they handcuffed him. Given the circumstances of the search, the reasonable concern about the presence of weapons within Plaintiff's reach, and Plaintiff's movements, it was objectively reasonable for Defendant Officers to believe that Plaintiff was actively resisting their attempts to secure him and thus the physical force used both to awaken Plaintiff and to subdue him <u>before</u> his hands were cuffed together was not excessive. As the Supreme Court observed in *Graham*, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." 490 U.S. at 396 (internal quotes and citation omitted).

Moreover, viewing the evidence in a light most favorable to Plaintiff, it was objectively reasonable for Defendant Officers to spray Plaintiff to subdue him in response to Officer Lawson's screams that his right leg was trapped under Plaintiff's body and was breaking. *See Monday v. Oullette*, 118 F.3d 1099, 1104-05 (6th Cir. 1997) (observing that the use of pepper spray by police responding to a reported possible overdose was reasonable to subdue a large, overweight, intoxicated male who, although not physically or verbally combative, was refusing to go to the hospital). Accordingly, Defendants are entitled to summary judgment on these claims. As observed in *Graham*, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." 490 U.S.

13

at 396-97.

### b. Force Used After Plaintiff's Hands Are Cuffed Together

As to Plaintiff's claim that Defendant Officers used excessive force when they allegedly pepper sprayed and punched him <u>after</u> his hands were cuffed together, genuine issues of material fact do exist thus precluding summary judgment in Defendants' favor. Contrary to Defendants' testimony, Plaintiff testified that, although he was not actively resisting, one of the Defendant Officers punched him and pepper sprayed him after his hands were cuffed together. Accordingly, viewing the evidence in the light most to Plaintiff, a genuine issue of fact exists as to whether a constitutional violation occurred.

Under Plaintiff's version of the facts, a reasonable jury could conclude that the force used was excessive. The right to be free from the use of excessive force is a clearly established constitutional right. *See Graham*, 490 U.S. at 392-99. More specifically, the right to be free from punches and pepper spray after an individual has been subdued and his hands cuffed together was clearly established at the time of the alleged incident. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902-903 (6th Cir. 2004) (citing cases). Accordingly, Defendants are not entitled to summary judgment on this claim.

Likewise, Defendants are not entitled to summary judgment on the basis of qualified immunity on this claim. To determine whether qualified immunity is available, the Court conducts a three-step inquiry:

> First, [it] determine[s] whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred. Second, [it] consider[s] whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, [it] determine[s] whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

14

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotes and citations omitted). As discussed above, viewing the evidence in the light most favorable to him, Plaintiff has satisfied the first two steps of this inquiry. Moreover, a genuine issue of fact exists for the jury whether Defendant Officers' actions were objectively unreasonable in light of the clearly established right to be free from the use of excessive force. Again, viewing the evidence in Plaintiff's favor, a reasonable jury could conclude that it was unreasonable for Defendant Officers to use the amount of force Plaintiff claims they did <u>after</u> his hands were cuffed together and when he was not resisting. *See Saucier v. Katz*, 533 U.S. 194, 205-07 (2001).

### c. Failure to Prevent Use of Excessive Force

Finally, the Court addresses Plaintiff's claim that each of the individual Defendant Officers is liable under § 1983 for failing to intervene and/or prevent the above alleged use of excessive force by the other Defendant Officers <u>after</u> his hands were cuffed together. The Sixth Circuit has observed that "there are circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.*

Although Defendants deny that they punched Plaintiff or saw another Defendant Officer punch Plaintiff, Plaintiff testifies that he was punched and pepper sprayed <u>after</u> his hands were handcuffed together. All four Defendants were present in Plaintiff's bedroom

at the time his hands were cuffed together, and, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants either actually observed or had reason to know that the alleged excessive force was being used. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claims that Defendant Officers failed to prevent the other Defendant Officers from punching and/or pepper spraying Plaintiff <u>after</u> his hands were cuffed together.

### B.  Plaintiff's Motion for Summary Judgment

Plaintiff also filed a cross-motion for summary judgment arguing that, because Defendants violated his clearly-established constitutional right to be free from the use of excessive force, Defendants cannot establish that they are entitled to qualified immunity. Plaintiff's motion is DENIED.  Genuine issues of material fact exist here precluding summary judgment for Plaintiff on the issue of qualified immunity.  Contrary to Plaintiff's testimony, Defendants testify that Plaintiff actively resisted Defendants, that no Defendant punched Plaintiff at any time, and that Plaintiff was not pepper sprayed or punched after his hands were cuffed together.  Viewing the evidence in the light most favorable to Defendants, there would be no use of excessive force, no violation of Plaintiff's constitutional rights, and no § 1983 claim.

### IV.  Conclusion

For the above-stated reasons, Defendants motions are GRANTED IN PART AND DENIED IN PART, and Plaintiff's motion for summary judgment is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 4, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 4, 2005, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager